IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY F. COLSON                                CV 05-6380-MA

       Plaintiff,                          OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

       Defendant.


ALAN STUART GRAF
Alan Stuart Graf, P.C.
P.O. Box 98
Summertown, TN 38483
(931) 964-3123

       Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

1 - OPINION AND ORDER

LEISA A. WOLF
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-3621

         Attorneys for Defendant

MARSH, Judge.

    Plaintiff filed a civil action for judicial review of a final decision of the Commissioner denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.  Plaintiff alleges the Administrative Law Judge (ALJ) erred in finding she is not entitled to benefits and seeks an order reversing the Commissioner's decision and remanding the case for the payment of benefits or, in the alternative, for further proceedings.

    The Commissioner contends her decision is based on substantial evidence and is free from legal error.  The Commissioner, therefore, requests that the court affirm her decision.

    This court has jurisdiction under 42 U.S.C. § 405(g).  For the following reasons, the court REMANDS the final decision of the Commissioner denying plaintiff's claim for SSI benefits for further proceedings as set forth below.

<u>**BACKGROUND**</u>

    Plaintiff applied for benefits on March 5, 2002, alleging she has been disabled as of December 20, 1999 because of a "knee

2 - OPINION AND ORDER

that dislocates, depression, migraines, and asthma."  In her application, plaintiff states "I cannot stand or walk for very long, cannot climb stairs, crawl, kneel, and the depression is where I have no energy and can't do anything.  Migraines are so severe that I cannot get out of bed due to vomiting."

Plaintiff requested a hearing, which was held on June 9, 2004.  On October 26, 2004, the ALJ issued a decision that plaintiff retained the residual functional capacity to perform a reduced range of light work, including the jobs of pricer/sorter or small products assembler/packager that were available in significant numbers in the national economy.  Accordingly, the ALJ found plaintiff was not disabled and was not entitled to SSI benefits.  Plaintiff appealed the denial of benefits to the Appeals Council.  On October 13, 2005, the Appeals Council affirmed the ALJ's decision and, therefore, that decision became the final decision of the Commissioner for purposes of judicial review.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

Here, at Step One, the ALJ found plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability.  20 C.F.R. § 416.920(b).

At Step Two, the ALJ found plaintiff suffers from a combination of impairments, including asthma, obesity, headaches, osteoarthritis of the knee, affective disorder (dysthymia), and anxiety disorder that are severe based on 20 C.F.R. § 416.920(c) (an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

5 - OPINION AND ORDER

At Step Three, the ALJ found plaintiff's impairments, singularly or in combination, did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation Number 4.  20 C.F.R. § 416.920(d).

The ALJ found plaintiff had the physical residual functional capacity to perform a reduced range of light work, including lifting or carrying up to twenty pounds on an occasional basis and up to ten pounds on a frequent basis, standing for up to one hour, with a sit/stand option, avoiding exposure to dust, chemicals, fumes, and gases.  The ALJ also found plaintiff's psychological residual functional capacity limited her to jobs involving routine, simple tasks.

At Step Four, the ALJ found plaintiff is able to perform her past work as a sorter/pricer, although the record is not clear that this job meets the requirements of past relevant work, i.e, whether the job lasted long enough for plaintiff to learn to do it, and was substantial gainful activity.  20 C.F.R. § 416.965.

At Step Five, the ALJ found plaintiff could perform a significant range of sedentary jobs that are available in significant numbers in the national economy, including pricer/sorter and small products packager/assembler.

Accordingly, the ALJ found plaintiff was not under a disability.  20 C.F.R. § 416.920(g).

## DISCUSSION

As of the date of the final decision, plaintiff was 34 years old.  She has a high school education.  She is divorced and has split custody of an eleven year old son.  She lives with her mother and four nephews (her sister's children).

Plaintiff has worked for brief periods as a restaurant/fast food cashier, bookkeeping assistant, telemarketing operator, wrecking yard counter person, church receptionist/secretary, retail store sales clerk, and catalog sales associate.  The most income she earned in any calendar year was approximately $2000 in 2001.

Plaintiff alleges she is disabled, and that the ALJ erred by (1) failing to credit the disability opinion of her treating physician, family practitioner Richard G. Kincade, Jr., M.D., (2) ignoring her mental limitations found by DDS psychologists, Dick Wimmers, Ph.D., and Paul Rethinger Ph.D., and physical limitations found by DDS physician, Charles Spray, M.D., (3) failing to address the effects of plaintiff's obesity on her other impairments, and (4) failing to find exactly how many full-time sorter/pricer jobs were available in the national economy.

Plaintiff asserts the "most serious error" the ALJ made was to disregard Dr. Kincade's disability opinion.  Accordingly, plaintiff urges this court to credit Dr. Kincade's opinion and

remand this case to the ALJ for an award of benefits.  In the
alternative, plaintiff requests a remand for further proceedings.
I agree the most significant issue in this case is whether the
ALJ should have credited Dr. Kincade's disability opinion.  For
the following reasons, however, I conclude the ALJ gave clear and
convincing reasons for not doing so.  I also conclude, however,
other issues raised by plaintiff require a remand for further
proceedings.

**1.  <u>Crediting Dr. Kincade's Disability Opinion.</u>**

"As a general rule, more weight should be given to the
opinion of a treating source than to the opinion of doctors who
do not treat the claimant." <u>Lester v. Chater</u>, 81 F.3d 821, 830
(9th Cir. 1995)(internal citations omitted).  "At least where the
treating doctor's opinion is not contradicted by another doctor,
it may be rejected only for 'clear and convincing' reasons.  We
have also held that 'clear and convincing' reasons are required
to reject the treating doctor's ultimate conclusions." <u>Id</u>.

Dr. Kincade has treated plaintiff for all of the ailments on
which she bases her disability claim since approximately March
2000.  In May 2004, at the request of plaintiff's counsel, he
offered his opinion that plaintiff suffers from a "significant
number of conditions which make long-term employment
difficult to sustain." Tr. 405.  He based his opinion on

plaintiff's "frequent asthma attacks, migraines, and difficulties with fairly substantial depression," which, cumulatively, make it "extremely difficult for her to sustain employment on an ongoing basis." <u>Id</u>. In addition, Dr. Kincade opined plaintiff's "somewhat limited" cognitive skills would require her job to be "minimally" challenging. <u>Id</u>. In sum, Dr. Kincade concluded plaintiff "does have the potential for employability but the sustained 40 hour work week is unlikely."

The ALJ's reasons for rejecting Dr. Kincade's disability opinion were as follows: (1) Dr. Kincade did not list migraines in his diagnostic assessments from 2002-2004; (2) his medical records reflect plaintiff's "respiratory issues" (asthma attacks) were "stable"; (3) his assessment of plaintiff's cognitive limitations are contradicted by assessments by examining psychiatrist, Lisa Sjodin, M.D., and consulting physician, Gregory Taylor, M.D.; and (4) plaintiff's depression was well-controlled by Wellbutrin, an antidepressant medication.

All-in-all, the ALJ found Dr. Kincade's disability opinion appeared to have been influenced by plaintiff's subjective complaints and her attorney's reporting, rather than objective medical evidence found in Dr. Kincade's chart notes. Tr. 24.

<u>Migraine Headaches</u>.

In the June 2004 hearing, Plaintiff testified that, for the last "five or six years," she has had migraine headaches "once

to three times a week," and when they are really severe (at least twice a week), she spends "about 12 hours" running back and forth from the living room to the bathroom to vomit.  Tr. 557-8.

Dr. Kincade's medical records from March 2000 through March 2004, however, fail to substantiate plaintiff's testimony regarding the severity of her migraine headaches.  In the more than 60 office visits during that period, Dr. Kincade noted plaintiff's complaints of persistent migraine headaches infrequently.  On occasion, Dr. Kincade noted the Zomig medication prescribed for plaintiff was effective and worked "very well."  See e.g., Tr. 214, 217.  On no occasion was there any mention of the kind of extreme vomiting described by plaintiff.  Most entries referring to vomiting and nausea or, more often, the absence of nausea and vomiting, were associated with stomach ailments, not migraine headaches. See, e.g., Tr. 344, 346.  Tests regarding plaintiff's migraines were negative.  Tr. 346.

Plaintiff also cites records from case worker Susan Ryan at the Center for Family Development, who worked with plaintiff for three years from 2001 through 2004.  She reported plaintiff complained of increased migraine headaches, sometimes severe, particularly between April and June 2003.  It is noteworthy that Dr. Kincade's multiple treatment records during this period do not refer to any migraine issues.

On this record, I find the ALJ gave clear and convincing reasons for not crediting Dr. Kincade's opinion regarding the severity of plaintiff's migraine headaches as a contributing factor in his disability opinion.

<u>Asthma</u>.

Plaintiff suffers from asthma. She testified she has asthma "setbacks" two or three times a week that are "so severe that even my inhalers aren't working." Tr. 577. Dr. Kincade's medical records, however, reflect that, for the most part, plaintiff's asthma is controlled by medication. In March 2001, plaintiff told Dr. Kincade she had a "prior history of mild asthma." Tr. 206. In April 2001, plaintiff reported that her asthma had been "set off by sinus pressure" but she continued to take medications on a regular basis "and so far has been able to keep the wheezing to a minimum." Tr. 201. During examinations in 2002 and 2003, plaintiff's lungs showed "scattered bronchi but no wheezing." Tr. 179, 362, 364. In May, June, and October 2003, Dr. Kincade noted the asthma was "stable." Tr. 338, 351, 352. Dr. Kincade's chart notes do not reflect the severity level described by plaintiff regarding her asthma.

On this record, I find the ALJ gave clear and convincing reasons for not crediting Dr. Kincade's opinion regarding the severity of plaintiff's asthma as a contributing factor in his disability opinion.

11- OPINION AND ORDER

Depression.

Plaintiff testified she gets "really depressed" and when
that occurs, she "[does not want] to do anything," such as go out
shopping.  Tr. 569.  When that occurs, about "once every month,"
her mother does the shopping for her.  Tr 570-571.  These periods
of depression last "clear up to two or three weeks, if not
longer," and "the shortest" plaintiff has dealt with it is "maybe
a week."  Id.

Dr. Kincade's records reflect an up and down course in the
treatment of plaintiff's depression, with positive results from
the prescribed medication, Wellbutrin, and occasional relapses.
These records generally support the ALJ's finding that
plaintiff's depression was well-controlled by Wellbutrin.  In
addition, the ALJ noted the opinion of examining psychiatrist,
Lisa Sjodin, M.D., that plaintiff's lack of motivation is more
likely "a manifestation of dependency on others for motivation
rather than amotivation associated with depression."  Tr. 288.

On this record, I find the ALJ gave clear and convincing
reasons for not crediting Dr. Kincade's opinion regarding the
severity of plaintiff's depression as a contributing factor in
his disability opinion.

Lack of Cognitive Skills.

Finally, as to Dr. Kincade's opinion that plaintiff's
"cognitive skills are somewhat limited as well, so the challenge

of her work would have to be fairly minimal," the ALJ noted Dr. Sjodin's psychiatric opinion that plaintiff was "cognitively intact" and is "capable of managing her own funds."  Tr. 288. In any event, the vocational expert testified the relevant job of pricer/sorter is an unskilled job.  Tr. 584.  There is no evidence in the record that any limitation in plaintiff's cognitive skills would be a factor in her ability to engage in the kind of substantial gainful activity described by the ALJ.

For all these reasons, I find the ALJ gave clear and convincing reasons for not crediting Dr. Kincade's opinion regarding plaintiff's ability to work and, therefore, did not err in disregarding it.

## 2.  **Crediting Plaintiff's Mental and Physical Limitations.**

Department of Disability Services medical experts offered opinions regarding limitations as to plaintiff's residual functional capacity.  Plaintiff alleges the ALJ failed to account for these limitations adequately in his disability analysis.

### Mental Limitations - Psychologists Dick Wimmers, Ph.D., and Paul Rethinger, Ph.D.

On review of plaintiff's medical records, Dr. Wimmers found "minimal" symptoms and/or findings of depression and post-traumatic stress disorder, and symptoms consistent with dependent and avoidant personality traits.  Tr. 305-309.

In his mental residual functional capacity assessment,

13- OPINION AND ORDER

Dr. Rethinger found plaintiff was not significantly limited in most categories but had "moderate limitations" in her ability to carry out detailed instructions, ability to work near others without being distracted, ability to interact appropriately with the general public, ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and ability to set realistic goals. Dr. Rethinger concluded plaintiff "can sustain simple tasks, 2hr periods, 8 hr days, 5 day weeks," if "she has limited contact w/ others," and has "help setting realistic goals." Tr. 312-318.

As to plaintiff's mental residual functional capacity, the ALJ found plaintiff should have only occasional interaction with the public, but he did not make any finding regarding any limitations in working with co-workers or peers, nor did he include that limitation in his hypothetical to the vocational expert (VE) regarding jobs in the national economy that plaintiff could perform in light of her limitations. Plaintiff contends this omission amounts to reversible error.

I agree. "If the hypothetical does not reflect all the claimant's limitations . . . the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

I conclude the appropriate remedy for this error is to

14- OPINION AND ORDER

remand the matter for further proceedings in which the ALJ shall
include plaintiff's mental limitation in working with coworkers
and peers in the hypothetical to the VE.

Physical Limitations - Internist Charles Spray, M.D.

Dr. Spray opined that, in light of pain caused by bilateral
knee dislocations, plaintiff has the physical residual functional
capacity to stand for "at least 2 hours in an 8-hour workday."
The ALJ, however, found plaintiff's "standing is limited to one
hour and she requires a sit/stand-option." Tr. 30.  In his
hypothetical to the VE, the ALJ posited that plaintiff "should be
limited to no more than one hour of standing at a time and jobs
should allow for a sit/stand option on that basis." Tr. 583.
(Emphasis added).

On this record, it is unclear whether the VE's opinion
regarding the availability of jobs in the national economy would
have been different if the hypothetical posited by the ALJ had
been based on the finding specifically made by the ALJ or the
residual functional capacity finding made by Dr. Spray, rather
than the hypothetical actually posited.

Accordingly, the court concludes a remand is appropriate for
further proceedings in which the ALJ shall clarify the
standing/sitting limitation and, if it still differs from the
specific functional limitation found by Dr. Spray, explain why.
See SSR 96-6p (the ALJ "may not ignore [the opinions of medical

15- OPINION AND ORDER

consultants] and must explain the weight given to these opinions in their decisions.").

**3.    Failure to Address Effects of Obesity on Other Impairments**.

Plaintiff contends the ALJ failed to address whether plaintiff's obesity, when considered with her other impairments, rendered her unable to work.  I disagree.

The ALJ is responsible for determining the effect of obesity on plaintiff's other impairments and its effect on her ability to work and general health, given the presence of those impairments. *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003).  In making that determination, however, the ALJ:

> will not make assumptions about the severity or functional effects of obesity combined with other impairments.  Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record.

Burch v. Barnhart, 400 F.3d 676, 682 Id. (Emphasis added).  See SSR 02-01p (2002).

Plaintiff has the initial burden of proving a disability. Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989).  The ALJ "is not required to discuss the combined effects of [Plaintiff's] impairments or compare them to any listing in an equivalency determination, unless [Plaintiff] presents evidence in an effort to establish equivalence.  Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).

16 - OPINION AND ORDER

In this case, plaintiff did not specifically assert her obesity as a disabling condition.  Plaintiff's obesity, however, is referred to on multiple occasions in the medical records, along with unheeded counseling that plaintiff should lose weight. Dr. Spray reviewed the medical records and provided the ALJ with his opinion that plaintiff could perform work with certain limitations.  As noted, at Step Two of the sequential process, the ALJ found plaintiff's impairments, including obesity when considered in combination with the other impairments, were severe.

Accordingly, on this record, I find the ALJ addressed plaintiff's obesity adequately, and it was considered appropriately in the final disability determination.

**4.    Number of Full-time Sorter/Pricer Jobs in National Economy.**

The ALJ found at Step Five of the sequential disability analysis that there are a significant number of pricer/sorter jobs (1400 in Oregon, 161,000 nationally) and assembler/packager jobs (4200 in Oregon, 300,000 nationally) that plaintiff has the residual functional capacity to perform.  Plaintiff contends the ALJ erred by failing to determine how many of those jobs were part-time rather than full-time.  The VE testified, however, that "[e]ven profiles and books that I use that are published by the State of Oregon and so forth certainly show that there's part-time and full-time jobs available in these categories."  Tr. 587.

On this record, I find no error in the ALJ's finding regarding the number of such jobs available in the national and regional economy.

## **CONCLUSION**

For these reasons, the Court REVERSES the final decision of the Commissioner and REMANDS this case for proceedings, in which the ALJ shall (1) include plaintiff's mental limitation in working with coworkers and peers in the hypothetical to the VE, and (2) clarify the standing/sitting limitation and, if it differs from the specific residual functional limitation found by Dr. Spray, explain why.

IT IS SO ORDERED.

DATED this 1  day of November, 2006.


_/s/  Malcolm F. Marsh_____
MALCOLM F. MARSH
United States District Judge

18 - OPINION AND ORDER